UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
DOCKET NO. 1:17-CV-00192-FDW

| | | |
|---|---|---|
| BRIE K. BUSHAW, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| NANCY A. BERRYHILL, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

THIS MATTER is before the Court on Plaintiff Brie K. Bushaw's Motion for Summary Judgment (Doc. No. 11) filed on December 26, 2017, and Defendant Acting Commissioner of Social Security Nancy A. Berryhill's ("Commissioner") Motion for Summary Judgment (Doc. No. 13) filed on February 22, 2018.

Having reviewed and considered the written arguments, administrative record, and applicable authority, and for the reasons set forth below, the Court DENIES Plaintiff's Motion for Summary Judgment; GRANTS the Commissioner's Motion for Summary Judgment; and AFFIRMS the Commissioner's decision.

I. BACKGROUND

Plaintiff filed an application for Title II and Title XVI disability benefits in April 2012, alleging disability. (Tr. 321, 325, 335). After her application was denied initially and upon reconsideration (Tr. 219, 226, 235), Plaintiff requested a hearing (Tr. 245). After the hearing on March 20, 2014, the ALJ issued an unfavorable decision. (Tr. 85, 194). Plaintiff's request for review by the Appeals Council was granted and remanded to the ALJ for a new hearing. (Tr. 216-

17). The ALJ held a remand hearing and supplemental hearing on May 5, 2016 and November 10, 2016, respectively. (Tr. 37, 55). The ALJ issued an unfavorable decision again, and Plaintiff's request for review by the Appeals Council was denied. (Tr. 1, 8).

The ALJ determined Plaintiff was not disabled from the alleged onset date through the date of the decision. (Tr. 11). The ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date and that she had the following severe impairments: "diabetes, obesity, affective disorders and anxiety disorders." (Tr. 13). The ALJ determined that none of these impairments nor any combination of the impairments met or medically equaled a per se disabled medical listing under 20 C.F.R. Pt. 404, Subpt. P, App. 1. (Tr. 14). The ALJ then found that Plaintiff had the Residual Functional Capacity ("RFC") to perform light work as defined in 20 CFR §§ 404.1567(b) and 416.967(b):

> [E]xcept she can never climb ladders, ropes, or scaffolds, occasionally climb ramps or stairs, stoop, crouch, or kneel, but never crawl; her work is limited to simple, routine, and repetitive tasks; performed in a work environment free of fast-paced production requirements; involving only simple, work-related decisions; and with few, if any, work place changes; she is capable of learning simple vocational tasks and completing them at an adequate pace with persistence in a vocational setting; and can perform simple tasks for two hour blocks of time with normal rest breaks during an eight hour work day; she is also limited to only occasional interaction with the public and coworkers.

(Tr. 16). In response to a hypothetical that factored in Plaintiff's age, education, work experience, and RFC, the vocational expert ("VE") testified that such an individual can perform jobs in the national economy that exist in significant numbers. (Tr. 23). Thus, the ALJ concluded that Plaintiff was not disabled, as defined under the Social Security Act. (Tr. 23).

Plaintiff has exhausted all administrative remedies and now appeals pursuant to 42 U.S.C. §§ 405(g) and 1382(c)(3). Plaintiff claims that the ALJ's decision should be reversed because the

ALJ relied on testimony from the VE that appears to conflict with the Dictionary of Occupational Titles ("DOT") and failed to sufficiently explain his determination that Plaintiff could perform tasks for two hour blocks of time.

## II. STANDARD OF REVIEW

Section 405(g) of Title 42 of the United States Code provides judicial review of the Social Security Commissioner's denial of social security benefits. When examining a disability determination, a reviewing court is required to uphold the determination when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence. 42 U.S.C. § 405(g); Westmoreland Coal Co., Inc. v. Cochran, 718 F.3d 319, 322 (4th Cir. 2013); Bird v. Comm'r of Soc. Sec. Admin., 699 F.3d 337, 340 (4th Cir. 2012). A reviewing court may not re-weigh conflicting evidence or make credibility determinations because "it is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the Secretary if his decision is supported by substantial evidence." Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 2013).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005) (alteration and internal quotation marks omitted). "It consists of more than a mere scintilla of evidence but may be less than a preponderance." Pearson v. Colvin, 810 F.3d 204, 207 (4th Cir. 2015) (internal quotation marks omitted). Courts do not reweigh evidence or make credibility determinations in evaluating whether a decision is supported by substantial evidence; "[w]here conflicting evidence allows reasonable minds to differ," courts defer to the ALJ's decision. Johnson, 434 F.3d at 653.

"In order to establish entitlement to benefits, a claimant must provide evidence of a medically determinable impairment that precludes returning to past relevant work and adjustment to other work." Flesher v. Berryhill, 697 F. App'x 212 (4th Cir. 2017) (citing 20 C.F.R. §§ 404.1508, 404.1520(g)). In evaluating a disability claim, the Commissioner uses a five-step process. 20 C.F.R. § 404.1520. Pursuant to this five-step process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the severity of a listed impairment; (4) could return to his past relevant work; and (5) if not, could perform any other work in the national economy. Id.; see also Lewis v. Berryhill, 858 F.3d 858, 861 (4th Cir. 2017) (citing Mascio v. Colvin, 780 F.3d 632, 634 (4th Cir. 2015)); 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)). The claimant bears the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five. See Lewis, 858 F.3d at 861; Monroe v. Colvin, 826 F.3d 176, 179–80 (4th Cir. 2016).

"If the claimant fails to demonstrate she has a disability that meets or medically equals a listed impairment at step three, the ALJ must assess the claimant's residual functional capacity ("RFC") before proceeding to step four, which is 'the most [the claimant] can still do despite [her physical and mental] limitations [that affect h[er] ability to work].'" Lewis, 858 F.3d at 861–62 (quoting 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1)). In Lewis, the Fourth Circuit explained the considerations applied before moving to step four:

> [The RFC] determination requires the ALJ to "first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions listed in the regulations." Mascio, 780 F.3d at 636 (internal quotations omitted); see also SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996). Once the function-by-function analysis is complete, an ALJ may define the claimant's RFC "in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." SSR 96-8p, 1996 WL

374184, at *1. See generally 20 C.F.R. §§ 404.1567, 416.967 (defining "sedentary, light, medium, heavy, and very heavy" exertional requirements of work).

When assessing the claimant's RFC, the ALJ must examine "all of [the claimant's] medically determinable impairments of which [the ALJ is] aware," 20 C.F.R. §§ 404.1525(a)(2), 416.925(a)(2), "including those not labeled severe at step two." Mascio, 780 F.3d at 635. In addition, he must "consider all [the claimant's] symptoms, including pain, and the extent to which [her] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence," 20 C.F.R. §§ 404.1529(a), 416.929(a). "When the medical signs or laboratory findings show that [the claimant has] a medically determinable impairment(s) that could reasonably be expected to produce [her] symptoms, such as pain, [the ALJ] must then evaluate the intensity and persistence of [the claimant's] symptoms so that [the ALJ] can determine how [her] symptoms limit [her] capacity for work." 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1).

Lewis, 858 F.3d at 862.

Proceeding to step four, the burden remains with the claimant to show he or she is unable to perform past work. Mascio, 780 F.3d at 635. If the claimant meets their burden as to past work, the ALJ proceeds to step five.

"At step five, the burden shifts to the Commissioner to prove, by a preponderance of the evidence, that the claimant can perform other work that 'exists in significant numbers in the national economy,' considering the claimant's residual functional capacity, age, education, and work experience." [Mascio, 780 F.3d at 635 (quoting 20 C.F.R. §§ 416.920(a)(4)(v), 416.960(c)(2), 416.1429)]. "The Commissioner typically offers this evidence through the testimony of a vocational expert responding to a hypothetical that incorporates the claimant's limitations." Id.

Lewis, 858 F.3d at 862. If the Commissioner meets this burden in step five, the claimant is deemed not disabled and the benefits application is denied. Id.

III. ANALYSIS

A. Apparent Conflict

Plaintiff argues that the ALJ's reliance on testimony from the VE that appears to conflicts with the DOT necessitates remand. (Doc. No. 12 at 5). When the ALJ relies on the testimony of a VE in step five to determine disability, the ALJ has the responsibility to (1) inquire whether there

5

are any conflicts between the VE's testimony and the DOT; (2) elicit a reasonable explanation for any apparent conflict from the VE; and (3) explain how the conflict is resolved in the ALJ's decision. Pearson v. Colvin, 810 F.3d 204, 208-210 (4th Cir. 2005); SSR 00-4p. A conflict is apparent if the "[VE's] testimony seems to, but does not necessarily, conflict with the [DOT]." Pearson, 810 F.3d at 209. "[I]f the ALJ does not elicit [an] explanation [for an apparent conflict], then the [VE's] testimony cannot provide substantial evidence to support the ALJ's decision." Id.; see also Henderson v. Colvin, 643 F. App'x 273, 277 (4th Cir. 2016).

The component for listings in the DOT at issue here is the General Educational Development ("GED"). The GED "embraces those aspects of education (formal and informal) which are required of the worker for satisfactory job performance." U.S. Dep't of Labor, Dictionary of Occupational Titles (4th ed. 1991), 1991 WL 688702. These aspects are "of a general nature" and "[o]rdinarily . . . obtained in elementary school, high school, or college" but "may be obtained from experience and self-study." Id. The GED scale is broken down into three divisions, Reasoning Development, Mathematical Development, and Language Development. Id. The Reasoning Development division has 6 levels. Id. For Reasoning Code 1, an individual must "[a]pply commonsense understanding to carry out simple one-or two-step instructions." Id. For Reasoning Code 2, an individual must "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions" and "[d]eal with problems involving a few concrete variables in or from standardized situations." Id. For Reasoning Level 3, an individual must "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form" and "[d]eal with problems involving several concrete variables in or from standardized situations." Id. For Reasoning Level 4, an individual must "[a]pply principles of rational systems[] to solve practical problems and deal with a variety of concrete variable in

6

situations where only limited standardization exist" and "[i]nterpret a variety of instructions furnished in written, oral, diagrammatic, or schedule form." Id. "Examples of rational systems are: bookkeeping, internal combustion engines, electric wiring systems, house building, farm management, and navigation." Id. With these definitions in mind, the Court turns to the case at hand.

In this case, the ALJ limited Plaintiff to "simple, routine, and repetitive tasks" in the RFC. (Tr. 16). Before questioning the VE, the ALJ inquired "do you understand that if you give us an opinion that conflicts with the information in the Dictionary of Occupational Titles that you need to both advise us of any apparent or obvious conflict and the basis of your opinion?" (Tr. 41-42). The VE answered in the affirmative and, in response to a hypothetical factoring in Plaintiff's age, education, work experience, and RFC, testified that the following jobs existed in the national economy for such an individual: Checker I, DOT #222.687-010; Mail Clerk, DOT #209.687-026; and Storage Facility Rental Clerk, DOT #295.367-026. (Tr. 23, 42, 44). The occupation of Checker I has a Reasoning Level of 2 listed in the DOT, U.S. Dep't of Labor, Dictionary of Occupational Titles, 222.687-010 (4th ed. 1991), 1991 WL 672130, and the occupations of Mail Clerk and Storage Facility Rental Clerk have a Reasoning Level of 3 listed in the DOT, U.S. Dep't of Labor, Dictionary of Occupational Titles, 209.687-026 (4th ed. 1991), 1991 WL 671813; U.S. Dep't of Labor, Dictionary of Occupational Titles, 295.367-026 (4th ed. 1991), 1991 WL 672594.

The Fourth Circuit has not addressed whether an RFC limitation of "simple, routine, and repetitive tasks" apparently conflicts with occupations with a Reasoning Level of 2 and 3.[1] However, this Court and many other district courts have found no apparent conflict. See, e.g., Hammond v. Berryhill, No. 3:17-cv-96-FDW, 2018 WL 1472488, at *7 (W.D.N.C. Mar. 23, 2018)

---

[1] As reflected in the parties' briefs, the district courts in this circuit have not reached a consensus on this matter.

(holding no conflict with Reasoning Level 2); Davis v. Berryhill, No. 5:16-cv-16-MR, 2017 WL 4248811, at *3 (W.D.N.C. Sept. 25, 2017) (holding no conflict with Reasoning Level 3); Keller v. Berryhill, No. 5:17-cv-1-FDW, 2017 WL 3710085, at *3 (W.D.N.C. Aug. 28, 2017) (same), appeal docketed, No. 17-2248 (4th Cir. Oct. 25, 2017); see also Clontz v. Astrue, No. 2:12-cv-13-FDW, 2013 WL 3899507, at *5 (W.D.N.C. July 29, 2013) (finding no conflict "because the requirements of GED reasoning level three are consistent with a limitation to simple, unskilled work" (citation omitted)). As defined by the Fourth Circuit, an apparent conflict is something that "seems to, but does not necessarily, conflict with the Dictionary." Pearson, 810 F.2d at 209. Identifying an apparent conflict does not involve more than "compar[ing] the express language of the Dictionary and the vocational expert's testimony." See id. at 209. Here, the RFC of "simple, routine, and repetitive tasks" do not seem to conflict with the ability to "[a]pply commonsense understanding to carry out detailed but uninvolved instructions" or "deal with problems involving several[, or a few] concrete variables in or from standardized situations[.]" U.S. Dep't of Labor, Dictionary of Occupational Titles (4th ed. 1991), 1991 WL 688702. Several is "more than two but not many." Several Definition, Oxford Dictionary, https://premium.oxforddictionaries.com/us/english/ (last visited April 20, 2018). Further, the format of the instructions, "written, oral, or diagrammatic form[,]" does not seem to conflict with the RFC limitation.[2] Both the descriptions of Level 2 and 3 and the occupations identified by the VE do not suggest an ability beyond an RFC of "simple, routine, and repetitive tasks" is required. There is nothing in the language to alert the ALJ of a discrepancy. Pearson, 810 F.3d at 210 (rejecting claimant's interpretation of SSR 00-4p, which "would allow the claimant to nitpick an ALJ's or expert's word choice on appeal"). Therefore, without any apparent conflict, the ALJ had

---

[2] The RFC did not limit Plaintiff's ability to hear, see, or read. (Tr. 16).

8

no obligation to elicit an explanation from the VE or resolve any apparent conflict in his decision. Pearson, 810 F.3d at 208-10.[3]

Plaintiff next argues the ALJ erred by failing to identify, elicit explanation, or explain conflicts between the VE's testimony and the O*Net, another classification system of occupations. (Doc. No. 12 at 11). However, Plaintiff has not identified any law or binding precedent establishing any duty on the ALJ as to O*Net. The Policy Interpretation Ruling SSR 00-4p contains no mention of O*Net. Therefore, this Court joins other district courts in rejecting Plaintiff's argument and request to impose an obligation on the ALJ unsupported by law. See, e.g., Ryan v. Astrue, 650 F. Supp. 2d 207, 218 (N.D.N.Y. 2009); Malfer v. Colvin, Civ. No. 12-169J, 2013 WL 5375775, at *5 (W.D. Pa. Sept. 24, 2013); Willis v. Astrue, No. Co8-1198-RSM, 2009 WL 1120027, at *3 (W.D. Wash. Apr. 24, 2009).

B. Ability to Stay on Task

Relying on Mascio v. Colvin, 780 F.3d 632 (4th Cir. 2015), Plaintiff argues that this case should be remanded for the ALJ's failure to explain his RFC determination that Plaintiff can perform tasks for two hour blocks of time. (Doc. No. 12 at 14). The Commissioner disagrees. The Commissioner contends not only is specific discussion of an ability to stay on task not necessary, but the ALJ supported the RFC finding through discussions of record evidence. (Doc. No. 14 at 10-11).

---

[3] The ALJ prompted the VE to address any apparent conflicts if his testimony conflicted with the DOT. The Court is unaware of, and Plaintiff has not cited, any cases holding that such inquiry must come after the VE's testimony. Even if Plaintiff could cite to law to this effect, such error would be harmless as there was no apparent conflict to address. Additionally, the ALJ's determination would still be supported by substantial evidence if the Level 3 occupations where disregarded. In response to the hypothetical, the VE's testified that such an individual could work as a Checker I, of which there are 70,000 jobs in the national economy. This testimony satisfies the Commissioner's burden of proving claimant can perform other work that exists in significant numbers in the national economy. See Bethea v. Berryhill, No. 5:17-cv-145, 2018 WL 1567356, at *4 (W.D.N.C. Mar. 30, 2018) ("As ticket taker alone is sufficient to meet the Commissioner's burden, the ALJ did not commit reversible error on this basis.").

An ALJ's RFC assessment "must . . . identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis . . . ." Mascio, 790 F.3d at 636 (quoting SSR 96-8p); see also Lewis, 858 F.3d at 862. However, the lack of an explicit function-by-function analysis does not require remand per se. Mascio, 790 F.3d at 636. "Remand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review[,]" id. (quoting Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir. 2013)), whereas remand is not appropriate when a function is irrelevant or uncontested, id.

When the ALJ finds in step three moderate difficulties in concentration, persistence, or pace, "the RFC must reflect the claimant's work functions as to this limitation unless the ALJ explains why a limitation in concentration, persistence, or pace at step three does not translate into a limitation on the claimant's capacity to do work-related activities." Watts v. Berryhill, No. 3:16-cv-850-FDW, 2017 WL 6001639, at *4 (W.D.N.C. Dec. 4, 2017) (citing Mascio, 780 F.3d at 638; SSR 96-8p). The ability to concentrate, persist, or maintain pace refers to the "ability to sustain focused attention and concentration sufficiently long to permit the timely and appropriate completion of tasks commonly found in work settings." 20 C.F.R. pt. 404, subpt. P, app. 1, § 404 12.00(C)(3). The Fourth Circuit has held that an ALJ does not account for a claimant's difficulties in concentration, persistence, or pace by restricting work functions to "simple, routine tasks or unskilled work" but does account for such difficulties by restricting the "ability to stay on task." Mascio, 780 F.3d at 638 (citations omitted); but see Sizemore v. Berryhill, 878 F.3d 72, 81 (4th Cir. 2017) (finding RFC limiting claimant to "simple one, two-step tasks in a low stress work environment with no public contact" sufficient to account for moderate difficulties in

10

concentration, persistence, or pace when supported by two doctor opinions). However, as explained previously by this Court, the Fourth Circuit did not conclude that the only way to account for moderate difficulties in concentration, persistence, or pace is to include in the RFC the language "ability to stay on task." Watts, 2017 WL 6001639, at *4.

"An explanation of how long a claimant is able to sustain concentration and attention to perform tasks is a direct accounting for the claimant's ability to stay on task—and difficulties in concentration, persistence and pace." Roope v. Berryhill, No. 5:16-CV-48-GCM, 2017 WL 1364603, at *3 (W.D.N.C. Apr. 12, 2017). In this case, the ALJ limited Plaintiff's ability to performing simple tasks for two hours at an adequate pace. Although not expressly using the term "on task," this limitation reflects Plaintiff's inability to stay on task for more than two hours. Specifically, as a result of Plaintiff's severe bipolar disorder, depression, and anxiety, the ALJ limited Plaintiff "to simple, routine, and repetitive tasks; performed in a work environment free of fast-paced production requirements; involving only simple work-related decisions; and with few, if any, work place changes; capable of learning simple vocational tasks and completing them at an *adequate pace* with persistence in a vocational setting; *can perform simple tasks for two hour blocks of time* with normal rest breaks during an eight hour work day; with only occasional interaction with the public and coworkers." (Tr. 18 (emphasis added); see also Tr. 16).

The ALJ then substantiated his conclusion for these work-related abilities.[4] The ALJ cites that Plaintiff's mental status exam was within normal limits, with her "thought, memory, attention/concentration and judgment" within normal limits (Tr. 18 (citing Tr. 551)). The ALJ also discusses Plaintiff's complaints in contrast to her medical records that reflect her affirmations

---

[4] As recognized by the Fourth Circuit, stating the RFC before discussing the claimant's limitations by each relevant function "creates the danger that 'the adjudicator [will] overlook limitations or restrictions that would narrow the ranges and types of work an individual may be able to do.'" Monroe v. Colvin, 826 F.3d 176, 187 (4th Cir. 2006) (quoting Mascio, 780 F.3d at 636). Although not a reversible error on this record, ALJs should heed to this danger.

that she is doing better, especially when on medication, and assessments finding her state as improved or without any distress, anxiety, or depression. (Tr. 18-20). As summarized by the Commissioner,

> The ALJ noted that Ms. Bushaw sought inpatient stabilization in May 2012 as a result of anger, frustration, and medication-related issues, and that, when she was discharged six days later, she "reported feeling better immediately with no panic attacks"; that she felt like "a new person" (Tr. 18 (citing Tr. 579, 580)). At a consultative exam in June 2012, Ms. Bushaw looked "extremely calm" (Tr. 18 (citing Tr. 613)). In April 2013, she reported that her depression was "much reduced," to a mild level, and that she got anxious "from time to time," but that it was "tolerable" (Tr. 18 (citing Tr. 719)). In September 2013, she reported doing well on medication and that her mood was "bright" (Tr. 19 (citing Tr. 735)). In July 2014, she reported some depression related to her disability application, but her provider noted that she "ha[d] come a long way since beginning treatment" and that she was "less depressed, less anxious and anger issues are much less" (Tr. 19 (citing Tr. 833)). In February 2015, she reported some depression but also that she had "no health issues today" (Tr. 19 (citing Tr. 800)). In May 2015, she was stressed by a move and her daughter's hospitalization, but she was doing "reasonably well," and was not overly anxious or depressed (Tr. 19 (citing Tr. 846)).

(Doc. No. 14 at 12). In addition to these inconsistencies, the ALJ stated Plaintiff's symptoms "appear to be adequately controlled with medications provided by her primary care provider and the mental health clinic, to the degree which would allow her to perform jobs within the assessed residual functional capacity." (Tr. 19). See Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986) ("If a symptom can be reasonably controlled by medication or treatment, it is not disabling."); 20 CFR § 404.1530(a), (b).[5] Thus, the Court concludes that the ALJ has applied the correct legal standards, accounted for the impairment in the RFC, and provided reasons in his analysis for the limitation, which is supported by substantial evidence.

---

[5] The ALJ also gave some weight to the opinion of Dr. Raymond Krych that Plaintiff "is able to understand, retain and follow instructions to some degree, has some difficulty sustaining attention because of her anxiety and depression, and . . . is anxious when relating to others[.]" (Tr. 20 (citing Tr. 646)). The ALJ considered his opinion in limiting Plaintiff "to low-stress, simple work with only occasional interaction with co-workers and the public" but noted that the Dr. Kyrch uses "vague terms" and "does not specify any mental work related limitations." (Tr. 20).

Additionally, as raised by the Commissioner, Plaintiff has not cited evidence in the record to suggest Plaintiff's ability to work is more limited than found by the ALJ. (Doc. No. 14 at 12). The Fourth Circuit recognized that remand of an uncontested or irrelevant function would be futile and thus inappropriate. Mascio, at 780 F.3d at 636. Without limitations for concentration, persistence, or pace beyond the ALJ's conclusion, remand would be futile and inappropriate here as well.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Summary Judgment (Doc. No. 11) is DENIED; the Commissioner's Motion (Doc. No. 13) is GRANTED; and the Commissioner's decision is AFFIRMED.

IT IS SO ORDERED.

Signed: April 26, 2018

Frank D. Whitney
Chief United States District Judge